UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISAIAH MCKINNLEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

CPT USA LLC, d/b/a COCKPIT USA

Defendant.

---

Case No.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, **ISAIAH MCKINNLEY** ("Plaintiff" or "Mr. Evans"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, CPT USA LLC d/b/a/ Cockpit USA("Cockpit USA" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff **Isaiah McKinnley** ("Plaintiff" or "Mr. McKinnley") is a legally blind resident of New York County whose best-corrected visual acuity measures **20/200 in his right eye** and **20/250 in his left**, accompanied by **severe peripheral field constriction** consistent with **retinitis pigmentosa**, a progressive retinal disorder that substantially limits his major life activity of sight. As documented in *Exhibit A – Legally Blind Diagnosis* (dated June 3, 2025), Mr. McKinnley's functional visual field radius is **less than 15 degrees**, rendering him legally blind under federal and New York State standards. He relies exclusively on **screen-reading software**, keyboard navigation, and digital accessibility features to browse websites, research products, and complete online purchases.

2. Plaintiff brings this action against **CPT USA LLC d/b/a Cockpit USA** ("Cockpit USA" or "Defendant"), the owner and operator of www.cockpitusa.com for violations of **Title III of the Americans with Disabilities Act**, 42 U.S.C. § 12181 et seq. Defendant markets and sells premium leather jackets, outerwear, apparel, and accessories through its website, which functions as a primary gateway for product discovery, customization, and online purchasing. Between **January and May 2026**, Plaintiff attempted on multiple occasions to browse and purchase merchandise from www.cockpitusa.com but was denied full and equal access due to pervasive accessibility barriers.

3. During these visits, Plaintiff attempted to research and purchase several items, including the *100 Mission A-2 Pilot's Jacket*, *Avenger G-1 Bomber Jacket*, *B-7 Aleutian WWII Sheepskin Parka*, *Cotton A-2 Flight Jacket*, *Tokyo Raiders A-2 Jacket*, and various accessories such as the *Shearling Aviator Cap* and *United States Army Air Forces Belt Buckle*. However, he was unable to meaningfully navigate product pages, select sizes or colors, add items to his cart, or complete a purchase due to widespread accessibility failures. Independent testing confirmed these barriers: a SortSite scan (39% complete) identified **435 pages with missing alternative text**, **435 pages with unnamed links**, **260+ pages with missing fieldset legends**, **99 pages with nested interactive controls**, and numerous additional WCAG 2.1 Level A/AA violations. A WAVE scan of Defendant's "New Arrivals" page revealed **107 errors**, including missing form labels, empty buttons, empty links, broken ARIA references, and contrast failures. These barriers violate the **Web Content Accessibility Guidelines (WCAG) 2.1 Level AA**, the industry standard for digital accessibility.

4. Mr. McKinnley was actively shopping for outerwear suitable for winter and spring

use and intended to purchase at least one jacket from Defendant's website. He remains interested in purchasing the same products and intends to return to www.cockpitusa.com once it is accessible. His allegations arise from **actual, repeated encounters** with Defendant's inaccessible website and satisfy the standing requirements articulated by the Second Circuit in *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022).

5. According to the U.S. Census Bureau, approximately **8.1 million Americans** are visually impaired, including **2.0 million who are blind**. The National Federation of the Blind reports that approximately **418,500 visually impaired individuals** reside in New York State. These individuals rely on accessible websites to shop, research products, and participate in modern commerce.

6. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and to ensure equal access to goods, services, and information. This mandate extends to websites and digital platforms that serve as public accommodations or as gateways to goods and services offered by places of public accommodation. New York State and New York City law similarly require businesses to provide equal access and reasonable accommodations to individuals with disabilities.

7. Defendant's website is **not accessible** to blind and visually impaired consumers. Plaintiff seeks a permanent injunction requiring CPT USA LLC d/b/a Cockpit USA to remediate www.cockpitusa.com and adopt policies, practices, and procedures that ensure ongoing compliance with the ADA and related state and local laws.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331

and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., ("NYCHRL") & § 296 et seq.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

10. Venue is proper in this District pursuant to **28 U.S.C. §§ 1391(b) and (c)** because Defendant conducts substantial, continuous, and systematic business within the Southern District of New York through its interactive commercial website, **www.cockpitusa.com**. Plaintiff accessed and attempted to use Defendant's website from his residence in **New York County**, which lies within this District. A substantial portion of the discriminatory conduct giving rise to this action occurred within the Southern District of New York.

11. Defendant **CPT USA LLC d/b/a Cockpit USA** is a New York limited liability company headquartered in New York City and registered with the New York Secretary of State. Defendant actively participates in New York's economic life by marketing, offering for sale, and selling apparel, outerwear, and accessories to New York consumers through its website. Through **www.cockpitusa.com**, Defendant enters into contracts with New York residents, processes payments, and transmits digital content, commercial offers, and product information into New York. Courts have consistently held that such conduct supports personal jurisdiction over out-of-state and in-state website operators alike. See **Reed v. 1-800-Flowers.com, Inc.**, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); **Andrews v. Blick Art Materials, LLC**, 286 F. Supp. 3d 365

(E.D.N.Y. 2017); **Ford Motor Co. v. Mont. Eighth Judicial Dist. Court**, 592 U.S. ___ (2021); **South Dakota v. Wayfair, Inc.**, 585 U.S. ___ (2018); **Romero v. 88 Acres Foods, Inc.**, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); **Sanchez v. NutCo, Inc.**, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); **Panarra v. HTC Corp.**, No. 6:20-cv-6991 (W.D.N.Y. Apr. 15, 2022).

12. Between **January and May 2026**, Plaintiff attempted to access **www.cockpitusa.com** from within this District to research and purchase several items of apparel, including the *100 Mission A-2 Pilot's Jacket*, *Avenger G-1 Bomber Jacket*, *B-7 Aleutian WWII Sheepskin Parka*, *Cotton A-2 Flight Jacket*, *Tokyo Raiders A-2 Jacket*, and various accessories. Plaintiff was unable to access product specifications, pricing, size and color options, or add items to his cart due to persistent accessibility barriers documented in independent testing, including **435 pages with missing alternative text**, **435 pages with unnamed links**, **260+ pages with missing fieldset legends**, **99 pages with nested interactive controls**, and numerous additional WCAG 2.1 violations. Because Plaintiff engaged with Defendant's website from within the Southern District of New York, venue is proper and jurisdiction is established.

13. Plaintiff seeks declaratory and injunctive relief compelling Defendant to remediate its website, adopt accessibility policies, and implement ongoing monitoring to ensure compliance with federal, state, and city disability laws. This action concerns not merely technical compliance but the enforcement of Plaintiff's right to equal access to Defendant's digital goods and services.

14. Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's website. Specifically, he was unable to complete a purchase, access relevant product information, or navigate essential features of the site.

These barriers deter Plaintiff from returning to the website and continue to exclude him from Defendant's digital marketplace.

15. Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's website. Specifically, he was unable to complete a purchase, access relevant product information, or navigate essential features of the site. These barriers deter Plaintiff from returning to the website and continue to exclude him from Defendant's digital marketplace.

## NATURE OF ACTION

16. The Internet is an essential tool for accessing information, conducting business, and performing everyday tasks such as shopping, banking, and managing household needs. For blind and visually impaired individuals like Plaintiff Isaiah McKinnley, digital access is not a convenience—it is a necessity. Mr. McKinnley relies on the Internet to research appliances, compare prices, and make informed purchasing decisions that support his independence and financial stability.

17. Between **January and May 2026**, Plaintiff attempted to access **www.cockpitusa.com** to research and purchase several items of outerwear and accessories, including the *100 Mission A-2 Pilot's Jacket*, *Avenger G-1 Bomber Jacket*, *B-7 Aleutian WWII Sheepskin Parka*, *Cotton A-2 Flight Jacket*, *Tokyo Raiders A-2 Jacket*, and accessories such as the *Shearling Aviator Cap* and *United States Army Air Forces Belt Buckle*. These products fit his needs, budget, and personal style. However, he was unable to access product specifications, pricing information, size and color options, or add items to his cart due to persistent accessibility barriers on Defendant's website. These barriers prevented him from completing a purchase and deterred

him from returning.

18. Plaintiff is legally blind due to retinitis pigmentosa, a progressive retinal condition that severely restricts his visual field. He uses screen-reading software, including NonVisual Desktop Access (NVDA), to navigate websites and digital interfaces. Mr. McKinnley is proficient in using NVDA and relies on it to independently access online content.

19. For screen-reading software to function properly, website content must be coded with semantic structure, proper labeling, and accessible markup. When websites lack these features, blind users cannot access the same information as sighted users. Plaintiff encountered this barrier on **www.cockpitusa.com** when attempting to review product details, select sizes, compare models, and add items to his cart.

20. Screen readers interpret content by extracting information from the website's underlying code and presenting it through text-to-speech or Braille output. When websites fail to follow accessibility protocols, these tools cannot accurately convey the content. Plaintiff's experience with **www.cockpitusa.com** included missing alternative text, unnamed links, empty buttons, missing form labels, improperly nested interactive controls, empty headings, and inaccessible navigation structures—all of which rendered key product and checkout pages unusable.

21. The **Web Content Accessibility Guidelines (WCAG) 2.1**, published by the World Wide Web Consortium (W3C), provide the widely accepted framework for digital accessibility. These guidelines are used by corporations, government agencies, and courts to evaluate whether websites are accessible to individuals with disabilities. Defendant has failed to implement these standards on **www.cockpitusa.com**, resulting in the exclusion of Plaintiff and others from

accessing essential product information and services.

22. Plaintiff conducted accessibility testing of www.cockpitusa.com, including a WAVE scan and a SortSite scan. The WAVE scan revealed **107 accessibility errors**, including missing text equivalents, empty links, empty buttons, broken ARIA references, missing form labels, and low-contrast elements. The SortSite scan—completed to 39% before encountering bot detection—identified **435 pages with missing alternative text**, **435 pages with unnamed links**, **260+ pages with missing fieldset legends**, **99 pages with nested interactive controls**, and numerous additional WCAG 2.1 Level A/AA violations. These barriers are consistent, widespread, and systemic across Defendant's website. Exhibit B.

23. These accessibility barriers prevented Plaintiff from completing essential tasks such as reviewing product specifications, selecting sizes, comparing models, and adding items to his cart. The barriers also deterred him from returning to the website. The inability to independently verify product details or complete a purchase constitutes a denial of equal access under the ADA.

24. Websites are dynamic platforms that require ongoing monitoring to remain accessible. A one-time fix is insufficient. Plaintiff seeks not only remediation of the current barriers but also a commitment to continuous accessibility testing, including automated audits, manual code review, and real-world validation by disabled users. Without such measures, www.cockpitusa.com will continue to exclude blind individuals from full participation in its digital offerings, undermining Plaintiff's ability to make informed purchasing decisions and live independently.

**STANDING**

25. Plaintiff Isaiah McKinnley is a legally blind individual residing in New York County. He is a member of a protected class under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)-(2), and the New York City Human Rights Law. Mr. McKinnley has been diagnosed with retinitis pigmentosa, a progressive retinal condition that severely restricts his peripheral vision and renders him unable to access visual content without assistive technology.

26. Mr. McKinnley relies exclusively on screen-reading software, including NonVisual Desktop Access (NVDA), to navigate websites and perform essential tasks. NVDA converts visual web content into speech output, allowing him to independently access digital interfaces. He is proficient in using NVDA and immediately detects when a website fails to meet accessibility standards—such as when buttons are unlabeled, navigation is broken, or dynamic content lacks text equivalents.

27. On **January 14, 2026**, Plaintiff visited **www.cockpitusa.com** to research several jackets, including the *100 Mission A-2 Pilot's Jacket*, *Avenger G-1 Bomber Jacket*, and *Highway Patrol Motorcycle Jacket*. He intended to review product specifications, compare models, and determine whether the items met his needs. Upon reaching the product pages, Plaintiff encountered multiple barriers that prevented him from accessing the information he needed. NVDA skipped over key interactive elements, including size selectors and "Choose Option" buttons, because they lacked programmatically determinable labels. Product images lacked alternative text, causing NVDA to announce them as "unlabeled graphic," depriving Plaintiff of essential visual information.

28. On **February 8, 2026**, Plaintiff returned to the website to evaluate heavier winter

outerwear, including the *B-7 Aleutian WWII Sheepskin Parka*, *Sheepskin "Mac" Jacket*, and *Sheepskin "Chore" Jacket*. These pages contained additional barriers, including empty headings, improperly nested interactive controls, and broken ARIA references. The "Add to Cart" button was visually present but inaccessible to NVDA due to nested interactive elements and missing accessible names. As a result, Plaintiff could not determine sizing, pricing, or availability.

29. On **March 2, 2026**, Plaintiff attempted to research lighter spring jackets, including the *Cotton A-2 Flight Jacket*, *Lightweight Pilot A-2 Flight Jacket*, and *Tokyo Raiders A-2 Jacket*. The product pages contained unlabeled links, placeholder alt text (e.g., "FAQ's"), and suspicious link text such as "Read More HERE," which provided no meaningful context to NVDA. Dynamic content, including promotional banners and product filters, lacked text equivalents, rendering them unusable.

30. On **April 11, 2026**, Plaintiff attempted to purchase accessories, including the *Shearling Aviator Cap* and the *United States Army Air Forces Belt Buckle*. These pages contained empty buttons, missing form labels, and inaccessible dropdown menus. NVDA announced several interactive elements as "button" or "edit box" without context, preventing Plaintiff from selecting options or adding items to his cart.

31. On **May 5, 2026**, Plaintiff made a final attempt to complete a purchase, specifically the *Road Warrior Jacket Z21U018* and the *Northwind Conway Peacoat*. The checkout flow was inaccessible: the "Add to Cart" button lacked an accessible name, the quantity selector relied on mouse-dependent controls, and the checkout form fields were unlabeled. NVDA announced these fields as "edit box" without identifying their purpose. Plaintiff could not confirm delivery eligibility or proceed to payment.

32. Plaintiff conducted accessibility testing of **www.cockpitusa.com**, including a WAVE scan that revealed **107 accessibility errors**, such as missing alternative text, empty links, empty buttons, broken ARIA references, and low-contrast elements. A SortSite scan—completed to 39% before encountering bot detection—identified **435 pages with missing alternative text**, **435 pages with unnamed links**, **260+ pages with missing fieldset legends**, **99 pages with nested interactive controls**, and numerous additional WCAG 2.1 Level A/AA violations. These barriers are systemic and pervasive across Defendant's website.

33. Plaintiff remains interested in purchasing the same jackets and accessories and intends to return to **www.cockpitusa.com** once it is made accessible. His allegations are grounded in **actual, repeated encounters** with Defendant's inaccessible website, not speculation. He identified specific products, attempted to engage with the website on multiple occasions, described the precise barriers that blocked his access, and expressed a clear intent to return once those barriers are removed. These facts satisfy the standing requirements articulated by the Second Circuit in *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022).

34. For Plaintiff, **www.cockpitusa.com** is not merely informational—it is a transactional gateway to essential consumer goods. His inability to access these integrated services constitutes a denial of equal access under Title III of the ADA and presents a credible threat of future harm. Like millions of Americans, Plaintiff relies on websites to perform essential tasks—whether locating products, checking availability, or accessing time-sensitive promotions. For individuals with disabilities, the ability to navigate a website independently is a matter of dignity, autonomy, and equal participation in the modern marketplace.

## CLASS ACTION ALLEGATIONS

35. Plaintiff **Isaiah McKinnley** brings this action on behalf of himself and all others similarly situated, seeking certification of a **nationwide class** under Fed. R. Civ. P. 23(a) and 23(b)(2): All legally blind individuals in the United States who have attempted to access **www.cockpitusa.com** and were denied equal access to its products, services, and digital content due to persistent accessibility barriers during the applicable statutory period.

36. Plaintiff also seeks certification of a **New York Subclass** under Fed. R. Civ. P. 23(a) and 23(b)(2): All legally blind individuals residing in the City and State of New York who have attempted to access **www.cockpitusa.com** and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.

37. Common questions of law and fact exist among the Class, including but not limited to:

- Whether **www.cockpitusa.com** qualifies as a "public accommodation" under Title III of the ADA
- Whether Defendant's website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;
- Whether the same barriers violate the NYSHRL, NYCRL, and NYCHRL by excluding blind users from meaningful participation in the digital marketplace;
- Whether Defendant's failure to adopt WCAG 2.1 A/AA standards constitutes unlawful discrimination; and

- Whether injunctive relief is warranted to ensure ongoing accessibility compliance.

38. Plaintiff's claims are **typical of the Class**. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—missing alternative text, unlabeled buttons, inaccessible forms, mouse-dependent controls, empty headings, and unreadable product specifications—that affect all Class members attempting to use **www.cockpitusa.com**.

39. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

40. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

41. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

42. Maintaining this action as a class proceeding will promote **judicial economy** by avoiding duplicative litigation and ensuring uniform relief for a class likely to include **hundreds, if not thousands**, of blind individuals who have attempted to use **www.cockpitusa.com** and faced exclusion due to its inaccessibility.

## FIRST CAUSE OF ACTION
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

43. Plaintiff, Isaiah McKinnley on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

44. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

45. Defendant's website that is offered as a link to the company is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

46. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

47. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

48. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

49. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

50. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

51. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider

of public accommodation".

52. Defendant is subject to NYCHRL because it owns and operates the Website **www.cockpitusa.com** making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

53. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

54. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

55. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

56. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

57. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

58. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

59. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

60. Plaintiff is also entitled to reasonable attorneys' fees and costs.

61. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**<u>THIRD CAUSE OF ACTION</u>**
**(New York State Human Rights Law)**
**("NYSHRL")**

62. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

64. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

65. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

66. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

67. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

68. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

69. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by

discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

70. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

71. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

72. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

73. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

74. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq*.

## FOURTH CAUSE OF ACTION
**(Violation of New York State Civil Rights)**
**("NYCRL")**

75. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

77. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

78. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

79. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

80. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

81. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

82. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

83. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

84. Plaintiff and the SubClass hereby demand compensatory damages of five hundred

dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

85. Plaintiff, ISAIAH MCKINNLEY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

87. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website

in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
May 10, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com